# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP2402 |
| COMPLETE TITLE: | Hailey Marie-Joe Force, a/k/a Hailey Marie-Joe Dziewa, a minor, by her Guardian Ad Litem, Joseph J. Welcenbach, <br><br>        Plaintiff-Appellant, <br>The Estate of Billy Joe Force, by its Special Administrator, <br><br>        Plaintiff, <br>    v. <br>American Family Mutual Insurance Company, Jeffrey A. Brown and Regent Insurance Company, <br><br>        Defendants-Respondents. <br><br>------------------------------------------------- <br>Mehgan Force, a minor, by her Guardian ad Litem, Jason Oldenburg, and Lauren Force, a minor, by her Guardian ad Litem, Jason Oldenburg, <br><br>        Plaintiffs-Appellants, <br>    v. <br>American Family Mutual Insurance Company and Jeffrey A. Brown, <br><br>        Defendants-Respondents, <br>Regent Insurance Company, <br><br>        Defendant. |

### ON CERTIFICATION FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | July 18, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 15, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Waukesha |
|   JUDGE: | J. Mac Davis |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | PROSSER, J., concurs. (Opinion filed.) |
|   DISSENTED: | ROGGENSACK, ZIEGLER, GABLEMAN, JJJ., dissent. (Opinion filed.) <br>ZIEGLER, J., dissent. (Opinion filed.) |

ATTORNEYS:

For the plaintiffs-appellants, there were briefs by *Joseph J. Welcenbach* and *Welcenbach Law Offices, S.C.*, Milwaukee, and *Jason R. Oldenburg* and *The Previant Law Firm, S.C.*, Milwaukee, and oral argument by *Joseph J. Welcenbach*.

For the defendant-respondent American Family Mutual Insurance Company and Jeffrey A. Brown, there was a brief by *James C. Ratzel*, *Leslie A. Schunk*, and *Ratzel & Associates, LLC*, Brookfield, and oral argument by *Leslie A. Schunk*.

For the defendant-respondent Regent Insurance Company there was a brief by *Donald H. Piper*, *Jon D. Monson*, and *Piper & Schmidt*, Milwaukee, and oral argument by *Donald H. Piper*.

An amicus curiae brief was filed by *Susan R. Tyndell*, *Peter M. Young*, *D. James Weis*, and *Habush Habush & Rottier, S.C.*, Rhinelander, on behalf of the Wisconsin Association for Justice.

**2014 WI 82**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP2402
(L.C. No. 2011CV3151 & 2012CV417)

STATE OF WISCONSIN      :      IN SUPREME COURT

Hailey Marie-Joe Force, a/k/a Hailey Marie-Joe
Dziewa, a minor, by her Guardian Ad Litem,
Joseph J. Welcenbach,

       Plaintiff-Appellant,

The Estate of Billy Joe Force, by its Special
Administrator,

       Plaintiff,

    v.

American Family Mutual Insurance Company,
Jeffrey A. Brown and Regent Insurance Company,

       Defendants-Respondents.

**FILED**

**JUL 22, 2014**

Diane M. Fremgen
Clerk of Supreme Court

-------------------------------------------------

Mehgan Force, a minor, by her Guardian ad
Litem, Jason Oldenburg, and Lauren Force, a
minor, by her Guardian ad Litem, Jason
Oldenburg,

       Plaintiffs-Appellants,

    v.

American Family Mutual Insurance Company and
Jeffrey A. Brown,

       Defendants-Respondents,

**Regent Insurance Company,**

           **Defendant.**

---

APPEAL from a judgment of the Circuit Court for Waukesha County, J. Mac Davis, Judge. *Reversed and remanded.*

¶1 SHIRLEY S. ABRAHAMSON, C.J. This is an appeal of a judgment of the circuit court for Waukesha County, J. Mac Davis, Judge, granting summary judgment in favor of Jeffrey Brown, American Family Mutual Insurance Company, and Regent Insurance Company (collectively the defendants). The part of the judgment at issue here dismissed the consolidated actions of Hailey Marie-Joe Force, Mehgan Force, and Lauren Force, collectively the minor children of Billy Joe Force, the deceased, against the defendants.

¶2 The court of appeals certified the action to this court pursuant to Wis. Stat. § (Rule) 809.61.

¶3 The issue before the court is: Can minor children recover for the wrongful death of their father under Wis. Stat. § 895.04(2) (2011-12),[1] when the deceased leaves behind a spouse who was estranged from the deceased and who is precluded from recovering for the wrongful death?

---

[1] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

¶4 Linda Force, the deceased's spouse in the instant case, is precluded from recovery for her husband's wrongful death because the circuit court dismissed her claim, concluding that she has no compensable damages under the wrongful death statute; this dismissal of Linda Force's wrongful death claim was not appealed.

¶5 In the instant case, Linda Force did not receive any financial support from the deceased from the time of their separation in 1997 to the deceased's death in 2008. Their long separation with no communication for many years was evidence that there was no interaction or affection between the spouses. The circuit court concluded that the unique facts of the instant case demonstrate that the deceased's spouse had no claim for damages for her husband's wrongful death under the wrongful death statutes. The dismissal of Linda Force's wrongful death claim is not before us.

¶6 The defendants argue that because the deceased's spouse is still living, she is a "surviving spouse" under the statutes; that her recovery for the wrongful death of her husband is zero; and that consequently the deceased's minor children do not have any set-aside from the surviving spouse's recovery.

¶7 The defendants rely on the statutory hierarchy of beneficiaries created by Wis. Stat. § 895.04(2).[2] The first class of beneficiaries is the surviving spouse, with a set-aside from his or her recovery for minor children "in recognition of the duty and responsibility of a parent to support minor children." If there is a "surviving spouse," other beneficiaries do not have a cause of action for wrongful death. If there is no "surviving spouse," the cause of action passes to the next beneficiary in the statutory hierarchy.

¶8 We disagree with the defendants' interpretation of the statutes. We conclude that in order to avoid an absurd, unreasonable result contrary to the legislative purposes of the wrongful death statutes, Wis. Stat. §§ 895.03 and 895.04(2), we construe the statutes under the unique facts of the instant case to allow the minor children to recover even though the deceased's spouse in the instant case is alive and does not

---

[2] Steinbarth v. Johannes, 144 Wis. 2d 159, 164, 423 N.W.2d 540 (1988) ("[Wisconsin Stat. §] 895.04(2) . . . establishes a hierarchy of beneficiaries . . . ."); Cincoski v. Rogers, 4 Wis. 2d 423, 425, 90 N.W.2d 784 (1958) ("The statutes . . . designate preferences according to the relationship to the deceased. . . . [T]he nonexistence of the preferred beneficiary or beneficiaries is essential to a right of action by or in behalf of other beneficiaries. The action must be brought by or for the wrongful death in the order of preference fixed by the statute."); Anderson v. Westfield Ins. Co., 300 F. Supp. 2d 726 (W.D. Wis. 2002) ("[T]he ability to recover under Wisconsin's wrongful death statute is similar to intestate succession, namely, a claimant has standing only if no other beneficiary higher in the hierarchy has standing.").

4

(according to the circuit court) recover any damages for the deceased husband's wrongful death.

¶9 Our result comports with the dual legislative purposes of the wrongful death statutes: (1) to impose liability on the wrongdoer; and (2) to protect relational interests, especially the interests of the deceased's minor dependent children.

¶10 The statutory interpretation advocated by the defendants would contravene these fundamental purposes of the wrongful death statutes by barring any wrongful death claim by Linda Force and the minor children, along with all lower-tier beneficiaries.

¶11 The defendants call for the unfair, unreasonable outcome that the Wisconsin legislature sought to avoid by enacting the first wrongful death statute in 1857: the wrongdoer would be immune from liability and no compensation would be recovered by the deceased's relatives who would have recovered had the deceased lived. The interpretation of "surviving spouse" should avoid such unreasonable, absurd results.

¶12 We examine the meaning of the phrase "surviving spouse" in Wis. Stat. § 895.04(2), in the unique fact scenario presented in this case.[3] The words "surviving" and "spouse" are

---

[3] Wisconsin Stat. § 895.04 uses various phrases to refer to the primary beneficiary of a wrongful death recovery: "[i]f the deceased leaves surviving a spouse," "if no spouse or domestic partner survives," and "surviving spouse." All refer to the same person. We use the phrase "surviving spouse" to refer to each of these statutory phrases. The case law has done similarly.

commonly used words.  The text of the wrongful death statute does not define who is or is not a "surviving spouse."

¶13  To interpret and apply the phrase "surviving spouse" in the wrongful death statutes, we examine the text of the wrongful death statutes using various interpretive aids. In interpreting words in a statutory text, we do more than focus on the dictionary definition of each word.  Interpretive aids such as the legislative purpose, prior Wisconsin case law and case law from other jurisdictions, and statutory history help guide our interpretation of the phrase "surviving spouse."

¶14  The legislative purposes are clear: impose liability on the tortfeasor and allow recovery by the deceased's relatives who would have recovered had the deceased lived.  Our case law demonstrates that courts interpret the wrongful death statutes to apply to the unique fact situation presented by a case in order to meet the legislative purposes, rather than apply a strict literal interpretation of the phrase "surviving spouse." Sister state case law similarly recognizes that a lower-tier beneficiary can maintain a claim even if a higher-tier beneficiary is alive, when the unique facts would otherwise contravene the purposes of the wrongful death statutes.

¶15  The statutory history of the wrongful death statutes demonstrates that the legislature has explicitly protected the rights of minor children to recover for wrongful death and left interpretation of the term "surviving spouse" to the courts in unique and specific fact situations.

¶16 Upon examining the statutory text with these interpretive aids, we conclude that the phrase "surviving spouse" in Wis. Stat. § 895.04(2) does not always simply mean any living spouse of the deceased. The meaning of the phrase "surviving spouse" has been elucidated by scrutinizing unique fact situations to define "surviving spouse" in accord with the legislative purposes of the wrongful death statutes, rather than considering only the literal meaning of the phrase "surviving spouse."

¶17 For the reasons set forth, we interpret the phrase "surviving spouse" in the present case as not including Linda Force, the deceased's estranged spouse who, as a result of the circuit court's dismissal of her wrongful death claim (which was not appealed), is barred from recovery under Wis. Stat. §§ 895.03 and 895.04(2). If Linda Force is not a "surviving spouse" under the statute, the parties do not dispute that the minor children have a cognizable claim as lineal heirs. As lineal heirs of the deceased, the children would be first in line for any recovery for the wrongful death of their father.

¶18 We conclude that the circuit court erred in granting the defendants summary judgment against the minor children and erred in dismissing the minor children's causes of action against the defendants for wrongful death. The minor children in the present case have a cause of action against the

defendants for wrongful death as if Linda Force were not alive at the death of the deceased.[4]

¶19 Accordingly, we reverse the judgment of the circuit court against the children and in favor of the defendants and remand the matter to the circuit court for further proceedings not inconsistent with this opinion.

¶20 To assist the reader, here is a table of contents to this opinion:

Introduction: ¶¶1-20.

I.   The facts and procedural history are not in dispute: ¶¶21-26.

II.  We review a grant of summary judgment independently of the circuit court, using the same methodology as the circuit court: ¶¶27-31.

III. The statutory text provides some support for the defendant's interpretation, but in unique fact situations, the defendant's interpretation may not be a reasonable one: ¶¶32-55.

IV.  The interpretation and application of the wrongful death statutes should be in accord with the explicit legislative purposes: (1) to render a wrongdoer liable when an injured party dies and (2) to compensate for the loss of a relational interest caused by the

---

[4] In light of our holding, we need not and do not address the children's equal protection constitutional claim that if Wis. Stat. § 895.04(2) bars their claim absent recovery by the surviving spouse, the statute is unconstitutional.

8

wrongful death, especially the interests of the minor children of the deceased: ¶¶56-68.

V. The Wisconsin case law and case law from other states reveal that "surviving spouse" does not always simply mean any spouse who survives the deceased: ¶¶69-110.

VI. The statutory history of the wrongful death statutes demonstrates that the legislature has explicitly protected the rights of minor children to recover for wrongful death and left interpretation of the phrase "surviving spouse" to the courts in unique and specific fact situations: ¶¶111-125.

Conclusion: ¶¶126-129.

I

¶21 The facts and procedural history of this case are undisputed for purposes of this appeal. Billy Joe Force, the deceased, was driving a motor vehicle for his employer. He died when his vehicle collided with a motor vehicle driven by Jeffrey Brown, the individual defendant.

¶22 The deceased's estranged spouse, Linda Force, and his three nonmarital minor children, Hailey, Mehgan, and Lauren,[5] each sought compensation from Jeffrey Brown, the individual defendant; American Family, the insurer of Brown's vehicle; and Regent Insurance Company, the insurer of Billy Joe Force's

---

[5] The complaint refers to Lauren Force as both "Lauryn" and "Lauren." We use "Lauren," as the circuit court, court of appeals, and briefs do.

9

employer. The allegation is that Brown's negligence caused Billy Joe Force's death.[6]

¶23 Billy Joe Force and Linda Force were married in 1995 or 1996 and separated after six months of marriage. They never were legally separated or divorced. They did not have any children together. Billy Joe Force had three children with two women who were not his wife. Linda Force has no legal obligation to support these three minor children.

¶24 At the time of the motor vehicle accident in 2006, Linda Force lived in New York; Billy Joe Force lived in Wisconsin. During the five years before his death in 2006, Linda Force had no contact with Billy Joe Force. Billy Joe

---

[6] Linda Force, the estranged spouse of the deceased, and Hailey Marie-Joe Force, Billy's youngest daughter, initiated one action seeking wrongful death damages.

Linda Force raised claims for wrongful death both as a surviving spouse and as special administrator for the estate of the deceased.

Hailey made two claims: first, that she was entitled to "an independent, cognizable claim for relief of her own" for damages arising out of the death of her father; and second, that in the absence of an independent claim, she was entitled to a "statutorily protected interest under [Wis. Stat.] Sec. 895.04 as a child of the deceased with whose support the deceased was legally charged."

Mehgan and Lauren initiated their own action, seeking wrongful death damages. They claimed that the defendant driver's negligence deprived them of their father's "aid, wages, economic benefits, assistance, society, comfort and companionship." They did not claim an offset from the recovery of Linda Force.

The cases were consolidated by the circuit court, pursuant to Wis. Stat. § 895.04(3), on March 30, 2012.

10

Force never provided any pecuniary support to Linda Force from 1997 until his death in 2008.

¶25 The circuit court granted summary judgment to the defendants, concluding, inter alia, that Linda Force, as a surviving, estranged spouse, had no compensable damages under the wrongful death statute and that none of the three children had a cause of action for wrongful death.[7]

¶26 The three minor children appealed the dismissal of their actions. Linda Force has not appealed the dismissal of her personal claim for damages for wrongful death.

II

¶27 We review a grant of summary judgment independently of the circuit court, using the same methodology as the circuit court.[8] Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[9]

¶28 The material facts are undisputed in the present case and the resolution of the dispute between the three minor children and the defendants turns on a question of law, that is, the interpretation and application of the wrongful death statutes to these undisputed facts. The interpretation and application of a statute to undisputed facts are ordinarily

---

[7] A survival claim by the estate of the deceased is not before us.

[8] Park Bank v. Westburg, 2013 WI 57, ¶36, 348 Wis. 2d 409, 832 N.W.2d 539.

[9] Wis. Stat. § 802.08(2).

questions of law that this court determines independently of the circuit court, although it benefits from the circuit court's analysis.[10] We also benefit from the analysis of the court of appeals in its certification memorandum in the present case.[11]

¶29 To interpret and apply the phrase "surviving spouse" used in the wrongful death statute, we examine the text of the statute.

¶30 In examining the statutory text, however, we do more than focus on a dictionary definition of each word. Words are given meaning to avoid absurd, unreasonable, or implausible results and results that are clearly at odds with the legislature's purpose.[12] We scrutinize the words in view of the

---

[10] Showers Appraisals, LLC v. Musson Bros., 2013 WI 79, ¶21, 350 Wis. 2d 509, 835 N.W.2d 226.

[11] Lornson v. Siddiqui, 2007 WI 92, ¶13, 302 Wis. 2d 519, 735 N.W.2d 55.

[12] Alberte v. Anew Health Care Servs., Inc., 2000 WI 7, ¶10, 232 Wis. 2d 587, 592, 605 N.W.2d 515; Seider v. O'Connell, 2000 WI 76, ¶32, 236 Wis. 2d 211, 612 N.W.2d 659; Teschendorf v. State Farm Ins. Cos., 2006 WI 89, ¶¶15, 18, 32, 293 Wis. 2d 123, 717 N.W.2d 258.

purpose of the statute.[13]  We consider the meaning of words in the context in which they appear.[14]  The definition of a word or phrase can vary in different circumstances.[15]  Different fact scenarios may require different interpretations of the text, because words cannot anticipate every possible fact situation.[16] "[R]easonable minds can differ about a statute's application

---

[13] State v. Hanson, 2012 WI 4, ¶17, 338 Wis. 2d 243, 255, 808 N.W.2d 390, 396 ("Context and [statutory] purpose are important in discerning the plain meaning of a statute.  We favor an interpretation that fulfills the statute's purpose.") (citations omitted); Klemm v. Am. Transmission Co., LLC, 2011 WI 37, ¶18, 333 Wis. 2d 580, 798 N.W.2d 223 ("An interpretation that fulfills the purpose of the statute is favored over one that undermines the purpose."); Lagerstrom v. Myrtle Werth Hosp.-Mayo Health System, 2005 WI 124, ¶51, 285 Wis. 2d 1, 700 N.W.2d 201 (examining "legislative goals" to interpret a statute); Alberte, 232 Wis. 2d 587, ¶10 (courts need not adopt a literal or usual meaning of a word when acceptance of that meaning would thwart the obvious purpose of the statute); United Wis. Ins. Co. v. LIRC, 229 Wis. 2d 416, 425-26, 600 N.W.2d 186 (Ct. App. 1999) ("Fundamental to an analysis of any statutory interpretation is the ascertainment and advancement of the legislative purpose.").

[14] Alberte, 232 Wis. 2d 587, ¶10 ("While it is true that statutory interpretation begins with the language of the statute, it is also well established that courts must not look at a single, isolated sentence or portion of a sentence, but at the role of the relevant language in the entire statute."); Seider, 236 Wis. 2d 211, ¶43 (contextual approach is not new); Klemm, 333 Wis. 2d 580, ¶18 ("The statutory language is examined within the context in which it is used.").

[15] Sauer v. Reliance Ins. Co., 152 Wis. 2d 234, 241, 448 N.W.2d 256 (Ct. App. 1989).

[16] Northrop v. Opperman, 2011 WI 5, ¶22 n.8, 331 Wis. 2d 287, 795 N.W.2d 719; Teschendorf, 293 Wis. 2d 123, ¶20.

when the text is constant but the circumstances to which the text may apply are kaleidoscopic."[17]

¶31 We also examine our case law interpreting the statute[18] and the statutory history of the statute to determine the meaning of words.[19]

III

¶32 This court has declared that there is no common-law action for wrongful death; the right to bring suit is purely statutory.[20]

---

[17] Seider, 236 Wis. 2d 211, ¶43.

[18] Nowell v. City of Wausau, 2013 WI 88, ¶21, 351 Wis. 2d 1, 838 N.W.2d 852; Juneau County Star-Times v. Juneau County, 2013 WI 4, ¶66, 345 Wis. 2d 122, 824 N.W.2d 457; State v. Davison, 2003 WI 89, ¶61, 263 Wis. 2d 145, 666 N.W.2d 1.

[19] "Statutory history encompasses the previously enacted and repealed provisions of a statute. By analyzing the changes the legislature has made over the course of several years, we may be assisted in arriving at the meaning of a statute. Therefore, statutory history is part of the context in which we interpret the words used in a statute." Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶22, 309 Wis. 2d 541, 749 N.W.2d 581 (citations omitted). See, e.g., LaCount v. General Cas. Co., 2006 WI 14, ¶31, 288 Wis. 2d 358, 709 N.W.2d 418; VanCleve v. City of Marinette, 2003 WI 2, ¶6, 258 Wis. 2d 80, 655 N.W.2d 113; State v. Byers, 2003 WI 86, ¶¶22-27, 263 Wis. 2d 113, 665 N.W.2d 729; Hughes v. Chrysler Motors Corp., 197 Wis. 2d 973, 980-84, 542 N.W.2d 148 (1996).

[20] Cogger v. Trudell, 35 Wis. 2d 350, 353, 151 N.W.2d 146 (1967). We need not re-examine this issue in the instant case.

For a discussion of a common-law action for wrongful death, see, e.g., Restatement (Second) of Torts, § 925 cmt. k; John Fabian Witt, From Loss of Services to Loss of Support: The Wrongful Death Statutes, the Origins of Modern Tort Law, and the Making of the Nineteenth-Century Family, 25 Law & Soc. Inquiry 717 (2000); Wex S. Malone, The Genesis of Wrongful Death, 17 Stan. L. Rev. 1043 (1965).

14

¶33 We turn first to the text of the wrongful death statutes, Wis. Stat. §§ 895.03 and 895.04(2).

¶34 Wisconsin's wrongful death statute was first enacted in 1857.[21] The present statute retains the 1857 statutory framework:

---

[21] The 1857 statute, ch. 71, Laws of 1857, had two sections, the first explaining the prerequisites for a claim, and the second explaining who may bring the action and who may recover damages:

§ 1. That whenever the death of a person shall be caused by a wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damage in respect thereof; then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death may have been occasioned under such circumstances as constitute an indictable offence; Provided, That such action shall be brought for a death caused in this State, and in some court established by the constitution and laws of the same.

§ 2. Every such action shall be brought by and in the name of the personal representative of such deceased person; and the amount recovered shall belong and be paid over to the husband or widow of such deceased person, if such relative survive him or her; but if no husband or widow survive the deceased, the amount recovered shall be paid over to his or her lineal descendants, and to his or her lineal ancestors in default of such descendants; and in every such action the jury may give such damages, not exceeding $5,000, as they shall deem fair and just in reference to the pecuniary injury resulting from such death to the relatives of the deceased specified in this section; Provided, Every such action shall be commenced within two years after the death of such deceased person.

15

- The statute states the conditions under which a wrongdoer is liable for wrongful death. Wis. Stat. § 895.03.

- The statute lists the persons who may bring a wrongful death action. Wis. Stat. § 895.04(1).

- The statute enumerates the persons to whom the amount recovered belongs. Wis. Stat. § 895.04(2).

¶35 Sections 895.03 and 895.04 are viewed in pari materia, having been created together and relating to the same topic.[22]

¶36 Wisconsin Stat. § 895.03 states the conditions under which a wrongdoer is liable for wrongful death. It is straightforward, clear, and easy to read. It is largely unchanged since the creation of the wrongful death cause of action in 1857.

¶37 The legislature has declared in every iteration of the wrongful death statute since 1857, including Wis. Stat. § 895.03, that "in every such case" in which a wrongdoer has caused death, the wrongdoer is "liable to an action for damages" as if death had not ensued. Thus, the legislature has proclaimed that a wrongdoer should be liable for a wrongful death when the injured party could have maintained an action and recovered damages from the defendant, had the injured party survived.

¶38 Wisconsin Stat. § 895.03 states in full:

---

[22] See Waranka v. Wadena, 2014 WI 28, ¶3, 353 Wis. 2d 619, 847 N.W.2d 324.

16

Whenever the death of a person shall be caused by a wrongful act, neglect or default and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, <u>then and in every such case the person who would have been liable, if death had not ensued, shall be liable to an action for damages notwithstanding the death of the person injured</u>; provided, that such action shall be brought for a death caused in this state (emphasis added).

¶39 No one disputes that the conditions set forth in Wis. Stat. § 895.03 that make a wrongdoer liable for wrongful death are met in the instant case.

¶40 Wisconsin Stat. 895.04(1) lists the persons who may bring a wrongful death action:

(1) An action for wrongful death may be brought by the personal representative of the deceased person or by the person to whom the amount recovered belongs.[23]

¶41 In the present case, the wrongful death actions were brought by the personal representative and by persons claiming to be the persons to whom the amount recovered for wrongful death belongs. No one disputes that the proper persons have brought the instant actions.

¶42 Wisconsin Stat. § 895.04(2) enumerates the persons to whom the amount recovered for wrongful death belongs. Unlike Wis. Stat. §§ 895.03 and 895.04(1), § 895.04(2) is a dense and

---

[23] Allowing someone other than the personal representative to assert a claim was added to the statute in 1913. Ch. 186, Laws of 1913. <u>See also</u> § 1, ch. 548, Laws of 1949 (permitting an individual to bring a wrongful death action even if the individual would also have a survival claim as administrator of the estate; amendment supersedes <u>Schilling v. Chicago, N. Shore & Milwaukee R. Co.</u>, 245 Wis. 2 173, 13 N.W.2d 594 (1944)).

difficult statute to read and understand. It has evolved to its present language by repeated legislative amendments.

¶43 Wisconsin Stat. § 895.04(2) creates a hierarchy of persons to whom the amount recovered belongs.[24] The first class of beneficiaries is the "surviving spouse," with a set-aside for minor children "in recognition of the duty and responsibility of a parent to support minor children." The second class is lineal heirs.

¶44 Wisconsin Stat. § 895.04(2) reads as follows:

(2) If the deceased leaves surviving a spouse or domestic partner under ch. 770 and minor children under 18 years of age with whose support the deceased was legally charged, the court before whom the action is pending, or if no action is pending, any court of record, in recognition of the duty and responsibility of a parent to support minor children, shall determine the amount, if any, to be set aside for the protection of such children after considering the age of such children, the amount involved, the capacity and integrity of the surviving spouse or surviving domestic partner, and any other facts or information it may have or receive, and such amount may be impressed by creation of an appropriate lien in favor of such children or otherwise protected as

---

[24] Steinbarth, 144 Wis. 2d at 164 ("[Wisconsin Stat. §] 895.04(2) . . . establishes a hierarchy of beneficiaries . . . ."); Cincoski, 4 Wis. 2d at 425 ("The statutes . . . designate preferences according to the relationship to the deceased. . . . [T]he nonexistence of the preferred beneficiary or beneficiaries is essential to a right of action by or in behalf of other beneficiaries. The action must be brought by or for the wrongful death in the order of preference fixed by the statute."); Anderson, 300 F. Supp. 2d at 729 ("[T]he ability to recover under Wisconsin's wrongful death statute is similar to intestate succession, namely, a claimant has standing only if no other beneficiary higher in the hierarchy has standing.").

circumstances may warrant, but such amount shall not be in excess of 50% of the net amount received after deduction of costs of collection.[25]  If there are no such surviving minor children, the amount recovered shall belong and be paid to the spouse or domestic partner of the deceased; if no spouse or domestic partner survives, to the deceased's lineal heirs as determined by s. 852.01; if no lineal heirs survive, to the deceased's brothers and sisters.[26]  If any such relative dies before judgment in the action, the relative next in order shall be entitled to recover for the wrongful death.[27]  A surviving nonresident alien spouse or a nonresident alien domestic partner

---

[25] This provision was adopted in substantially this form in 1962, making the surviving spouse the primary beneficiary and granting the minor children a set-aside.  See ch. 649, Laws of 1961.  See ¶¶111-125, infra, which discuss the statutory history of this section.

Changes subsequent to the 1962 amendment added additional beneficiaries to Wis. Stat. § 895.04(2) but did not substantially change the structure of the provision.  For example, the legislature added the words "and domestic partners" alongside the word "spouse."  2009 Wis. Act 28, § 3269.

[26] See chs. 164, 581, Laws of 1907 (adding "but if no husband or widow or lineal descendant or ancestor survive the deceased, the amount recovered shall be paid over to the brothers and sisters").  Brothers and sisters were added apparently in response to Brown v. Chicago & N.W. Ry. Co., 102 Wis. 137, 77 N.W. 748 (1898) (because the statute, Wis. Stat. § 4256 (1898), permitted recovery only for the spouse or lineal descendants and ancestors of the deceased, brothers and sisters could not recover).

[27] See § 1, ch. 263, Laws of 1931.

The provision relating to the death of a relative before judgment in a wrongful death action was added, apparently in response to Woodward v. Chicago & N.W. Ry. Co., 23 Wis. 400 (1868) (holding that the wrongful death action terminated when deceased's surviving spouse died before judgment).  See Eleason v. Western Cas. & Sur. Co., 254 Wis. 134, 140, 35 N.W.2d 301 (1948) (holding that the 1931 amendment controlled over previous cases holding that wrongful death actions terminated with the death of the holder of the claim).

under ch. 770 and minor children shall be entitled to the benefits of this section.[28]  In cases subject to s. 102.29 this subsection shall apply only to the surviving spouse's or surviving domestic partner's interest in the amount recovered.  If the amount allocated to any child under this subsection is less than $10,000, s. 807.10 may be applied.  Every settlement in wrongful death cases in which the deceased leaves minor children under 18 years of age shall be void unless approved by a court of record authorized to act hereunder (emphasis and footnotes added).

¶45 There is a difference between a wrongful death claim and a survival claim.  A wrongful death claim, as we explain above, compensates the deceased's relatives for the damages they suffer as a result of the deceased's death.[29]  A survival claim

---

[28] See § 1, ch. 226, Laws of 1911 (amending the statute to state explicitly that "non-resident alien surviving relatives shall be entitled to the benefits of this section").  The 1911 provision relating to aliens was apparently inserted in response to McMillan v. Spider Lake Sawmill & Lumber Co., 115 Wis. 332, 91 N.W. 979, 980-81 (1902), in which the court held that nonresident alien citizens of foreign countries were not entitled to recover under the wrongful death statute.  The spouse in McMillan was a Canadian citizen and did not reside in the United States.  The McMillan court asserted that the legislature did not intend this cause of action to convey benefits and recovery to nonresidents.

Three years later, the legislature again amended the statute to limit nonresident alien relatives to a surviving spouse and minor children, stating that only "a nonresident alien surviving wife and minor children shall be entitled to the benefits of this section."  § 1, ch. 35, Laws of 1915.

[29] Wisconsin Stat. § 895.04(4) provides as follows:

(4) Judgment for damages for pecuniary injury from wrongful death may be awarded to any person entitled to bring a wrongful death action.  Additional damages not to exceed $500,000 per occurrence in the case of a deceased minor, or $350,000 per occurrence in the case of a deceased adult, for loss of society and

20

compensates the estate of the deceased (or persons who paid expenses on behalf of the estate) for damages suffered by the deceased between the time of the injury and the time of death.[30]

¶46 The personal representative may bring both a wrongful death claim and a survival claim, but the beneficiaries receiving the damages recovered under the two claims may be different.[31] "[T]he right to sue under the wrongful death statute must be distinguished from the ownership of the recovery. Because the [wrongful death] action is granted by

---

companionship may be awarded to the spouse, children or parents of the deceased, or to the siblings of the deceased, if the siblings were minors at the time of the death.

[30] "The survival action is brought by the representative of the deceased for personal injury damages suffered by the deceased prior to his death. The damages accrue to the estate of the deceased." Prunty v. Schwantes, 40 Wis. 2d 418, 422, 162 N.W.2d 34 (1968).

See also Wangen v. Ford Motor Co., 97 Wis. 2d 260, 312, 294 N.W.2d 437, 463 (1980) (quoting Koehler v. Waukesha Milk Co., 190 Wis. 52, 56, 208 N.W. 901 (1926)):

The cause of action for the [deceased]'s pain and suffering which . . . passes to a decedent's estate[ ] is separate and distinct from this wrongful death action. The estate's action is for the wrong to the injured person; the wrongful death action belongs to named beneficiaries for their pecuniary loss; the latter action begins where the former ends. "It is not a double recovery, but a recovery for a double wrong."

[31] Wangen, 97 Wis. 2d at 310.

21

statute, ownership of the recovery is limited to the beneficiaries designated under the statute."[32]

¶47 In order to determine whether a beneficiary exists who may recover under a wrongful death claim, the court has frequently grappled with disputes regarding the interpretation of the wrongful death statute's hierarchical beneficiary structure.[33] The legislature did not anticipate numerous fact

---

Wisconsin Stat. 895.04(5) provides:

> (5) If the personal representative brings the action, the personal representative may also recover the reasonable cost of medical expenses, funeral expenses, including the reasonable cost of a cemetery lot, grave marker and care of the lot. If a relative brings the action, the relative may recover such medical expenses, funeral expenses, including the cost of a cemetery lot, grave marker and care of the lot, on behalf of himself or herself or of any person who has paid or assumed liability for such expenses.

[32] Weiss v. Regent Props., Ltd., 118 Wis. 2d 225, 230, 346 N.W.2d 766 (1984) (citations omitted) (citing Nichols v. U.S. Fid. & Guar. Co., 13 Wis. 2d 491, 497, 109 N.W.2d 131 (1961)). See also 2 The Law of Damages in Wisconsin § 16.15 at 16-18 (Russell M. Ware et al. eds. 2014) ("Because the purpose of allowing damages for wrongful death is to compensate the deceased's relatives for their loss, wrongful death damages do not become a part of the deceased's estate.").

[33] The courts have reached various outcomes based on the facts of each case.

Cases holding for the lower-tier beneficiary to recover:

- Steinbarth v. Johannes, 144 Wis. 2d 159, 423 N.W.2d 540 (1988) (holding that a spouse who intentionally killed the deceased is not a "surviving spouse" and that the children hold the claim as lineal heirs);

22

- <u>Krause v. Home Mut. Ins. Co.</u>, 14 Wis. 2d 666, 112 N.W.2d 134 (1961) (holding that although the spouse died shortly after the deceased, the children held the claim, because satisfying the purposes of the statute required that the phrase "surviving spouse" not mean the spouse of the deceased who is living at the time of the death of the deceased, but rather the "spouse of the deceased living when the action was commenced");

- <u>Lasecki v. Kabara</u>, 235 Wis. 645, 294 N.W. 33 (1940) (holding that although the children did not have an independent claim of action against their father for the wrongful death of their mother, when the mother herself died, the wrongful death that claim she held went to her children).

Cases holding against the lower-tier beneficiary:

- <u>Cogger v. Trudell</u>, 35 Wis. 2d 350, 359, 151 N.W.2d 146 (1967) (holding that the deceased's spouse who negligently killed the spouse is a surviving spouse, and that their children have no claim);

- <u>Hanson v. Valdivia</u>, 51 Wis. 2d 466, 475, 187 N.W.2d 151 (1971) (holding that when the deceased's spouse alleged to be responsible for the death survived, the minor surviving children "do not have a cause of action for the wrongful death of one of their parents when the [deceased] is survived by his or her spouse, and the fact that the surviving spouse was responsible for the death does not create a new cause of action in the children");

- <u>Woodward v. Chicago & N.W. Ry. Co.</u>, 23 Wis. 400 (1868) (holding that when the deceased's husband died while pursuing a wrongful death claim against the defendant, the husband's wrongful death claim cannot survive his death), <u>superseded by statute as stated in</u> <u>Eleason v. Western Cas. & Sur. Co.</u>, 254 Wis. 134, 139, 35 N.W.2d 301 (1948).

scenarios in its enactment of the wrongful death statute, and the courts have had to fill the gaps in the statute.

¶48 To determine the meaning of the phrase "surviving spouse" in the unique fact scenario of the instant case, we must fill the gap in the statute. In enacting Wis. Stat. § 895.04(2), the legislature did not anticipate the fact scenario presented in the instant case in which a long-time estranged spouse does not obtain a divorce, has no recoverable damages on the death of the deceased husband, and has no legal obligation to support nonmarital minor children of the deceased.

¶49 In referring to a "surviving spouse" and creating a hierarchical structure of beneficiaries in the wrongful death statute, the legislature envisioned an intact marriage with minor marital children whom both the deceased and the deceased's spouse were obliged to support. Indeed, "[a] careful reading of the entire section [895.04(2)] makes it clear that the trial court in an attempt to protect the children must work from the amount recovered <u>by the spouse who is charged with the support of the minor children</u>."[34]

¶50 The defendants argue that the statutory hierarchy of beneficiaries bars the minor children in the present case from asserting a claim for wrongful death because the deceased left a

---

- <u>Bowen v. Am. Family Ins. Co.</u>, 2012 WI App 29, ¶19, 340 Wis. 2d 232, 811 N.W.2d 887 (holding that a primary beneficiary under the wrongful death statutes could not waive his claim and pass it on to a secondary beneficiary).

[34] <u>Cogger</u>, 35 Wis. 2d at 358.

living spouse, and the surviving spouse, Linda Force, cannot claim any damages for wrongful death according to the circuit court.

¶51 The defendants rest their position on a literal interpretation of the phrase "surviving spouse":

- Linda Force is the spouse of the deceased;

- she is still living;

- as an estranged spouse she cannot, according to the circuit court's dismissal of her claim, recover damages any for pecuniary loss and loss of society and companionship;

- the minor children's share is limited under the statute to a set-aside from the surviving spouse's recovery; and

- because Linda Force's recovery is zero, the minor children's set-aside is also zero.

¶52 The defendants' reading of the statute is not without support in the text, but the defendants' interpretation is not necessarily a reasonable reading of the phrase "surviving spouse" in unique fact situations.

¶53 First, the statute does not define who is or is not a surviving spouse.[35]

¶54 Second, the text of Wis. Stat. § 895.04(2) does not expressly state that minor children are barred from recovery when a surviving spouse fails to recover any damages. Rather,

---

[35] _Steinbarth_, 144 Wis. 2d 159.

§ 895.04(2) provides that minor children get a set-aside from the surviving spouse's recovery and recover as lineal heirs if no surviving spouse exists.

¶55 A study of the text demonstrates that we are unable to discern the answer to our inquiry in the present case by a mere examination of the words of Wis. Stat. § 895.04(2) isolated from interpretive aids. We next look for assistance from the legislative pronouncement of the purposes of the wrongful death statutes.

IV

¶56 The minor children's position that they should recover under the wrongful death statutes is supported by the legislative purposes advanced by Wis. Stat. §§ 895.03 and 895.04(2).

¶57 The legislature has declared in Wis. Stat. §§ 895.03 and 895.04(2) that the purposes of the wrongful death statutes are (1) to hold wrongdoers liable for damages upon death of an injured person, and (2) to compensate relatives of the injured party for the losses caused by the wrongful act. A holding that the minor children cannot maintain a wrongful death claim in the instant case would contravene those fundamental purposes. The wrongdoers would escape liability and the minor children would not be compensated for their losses.

¶58 The purposes of the wrongful death statutes have existed since the law's enactment in 1857. The wrongful death

statute was enacted to correct a perceived injustice at common law providing no cause of action for wrongful death.[36]

¶59 As the Prosser & Keeton treatise explains, the common-law rule had perverse "intolerable" consequences: "The result was that it was cheaper for the defendant to kill the plaintiff than to injure him, and that the most grievous of all injuries left the bereaved family of the victim, who frequently were destitute, without a remedy."[37]

---

[36] See Rudiger v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co., 94 Wis. 191, 68 N.W. 661 (1896):

> It was the obvious purpose of this statute to reverse this rule of law, and to provide that the right of action should survive, as in case of damages to property, and, of course, be liable to be prosecuted by or against an executor. . . . The statute under consideration was enacted to supply the manifest defect in the law as it thus existed, and to provide a remedy against the wrongdoer, if death ensued in consequence of his negligent or wrongful act (internal quotation marks omitted).

According to Blackstone, when a husband or father was injured or killed, the wife or child could not recover. 3 William Blackstone, Commentaries *142-43. As the seminal English case Baker v. Bolton, Eng. Rep. (1808) 1 Camp. 493; 10 R.R. 734, noted, "in a civil court the death of a human being could not be complained of as an injury . . . ."

The common-law rule barring claims for wrongful death was criticized by the second Justice Harlan in Moragne v. States Marine Lines, Inc., 398 U.S. 375 (1970). The Moragne Court observed that the common-law rule against wrongful death claims was criticized as "barbarous" and set forth no "persuasive, independent justification" for distinguishing between two claims claiming a breach of the same primary duty to the injured party simply because the injured party happened to die in one instance and not the other. Moragne, 398 U.S. at 381-82.

[37] Prosser & Keeton on Torts § 127, at 945 (5th ed. 1984).

¶60 In 1846, Parliament passed Lord Campbell's Act, which sidestepped the common law and created a statutory right of action for surviving spouses, children, and parents, as well as other lineal descendants.[38]

¶61 States too adopted laws recognizing a statutory right of action for wrongful death.

¶62 In Wisconsin, the wrongful death statute enacted in 1857 was an almost verbatim copy of the New York wrongful death statute,[39] which itself was copied nearly word for word from Lord Campbell's Act.[40]

¶63 A New York court explained that the New York statute extended the principle of liability to a wrongdoer who causes the death of another and gave the right to damages to representatives of the deceased.[41]

¶64 Wisconsin courts have echoed these general principles as the driving purposes behind the wrongful death statutes.

---

[38] For a discussion of the evolution of the rules governing wrongful death suits in England and the United States, see Wex S. Malone, The Genesis of Wrongful Death, 17 Stan. L. Rev. 1043 (1965).

[39] Compare ch. 71, Laws of 1857, with N.Y. Laws of 1847, ch. 450. See also Whiton v. Chicago & N.W. Ry. Co., 21 Wis. 305, 308 (1867) (noting that New York and Wisconsin employ "the same statute").

[40] See John Fabian Witt, From Loss of Services to Loss of Support: The Wrongful Death Statutes, the Origins of Modern Tort Law, and the Making of the Nineteenth-Century Family, 25 Law & Soc. Inquiry 717, 734 (2000).

[41] Baker v. Bailey, 16 Barb. 54, 60, 1852 WL 5345 (N.Y. Gen. Term. 1852).

First, "[t]he injustices and hardships resulting from the common law principles in wrongful death cases caused the legislature to create statutory remedies and liability."[42]

¶65 Second, "[t]he purpose of the wrongful death statute is to compensate for the loss of the relational interest existing between the beneficiaries and the deceased."[43]

¶66 In 1961 the legislature explicitly protected the interests of minor children of the deceased "in recognition of the duty and responsibility of a parent to support minor children."[44]

¶67 In contrast to these purposes, the defendants' interpretation of the wrongful death statutes liberates the alleged wrongdoer from all liability for the wrongful death in the instant case. According to the defendants, the liability of the wrongdoer for the deceased's death in the present case is zero and no relative of the deceased, including his minor children, recovers any amount. If we accept the defendants' reasoning, the wrongdoer in the instant case gets a windfall at

---

[42] Cogger, 35 Wis. 2d at 353.

[43] Chang v. State Farm Mut. Auto. Ins. Co., 182 Wis. 2d 549, 560-61, 514 N.W.2d 399 (1994) (internal quotation marks and quoted source omitted).

[44] See ¶¶42-49 and accompanying notes, supra.

the expense of the deceased's surviving dependent minor children.[45]

¶68 The defendants' interpretation contravenes the legislative purposes and produces an unfair, unreasonable, or absurd result that the legislature could not have intended.

V

¶69 We turn to case law to assist us in interpreting the phrase "surviving spouse" within the context of the wrongful death statutes.

¶70 In several cases, the court has employed a literal interpretation of the phrase "surviving spouse," holding that a spouse living at the time of the wrongful death is a "surviving spouse" under the wrongful death statutes.[46] In other cases courts have not read the phrase literally.[47] No prior case is directly on point, but we can derive principles from the case law that inform our resolution of the instant case.

¶71 We begin with Cogger v. Trudell, 35 Wis. 2d 350, 353, 151 N.W.2d 146 (1967), a lead case governing to whom a recovered

---

[45] This case does not address the survival action of the deceased's estate. See Wis. Stat. § 895.01(1)(am)7. Survival actions are different from wrongful death actions. See supra ¶¶45-46.

[46] See, e.g., Hanson, 51 Wis. 2d 466; Cogger, 35 Wis. 2d at 354-55; Bowen, 340 Wis. 2d 232.

[47] See, e.g., Steinbarth, 144 Wis. 2d at 165; Xiong ex rel. Edmondson v. Xiong, 2002 WI App 110, 255 Wis. 2d 693, 648 N.W.2d 900.

wrongful death award belongs when a living spouse may not be able to recover damages and children seek to recover.

¶72 In Cogger, Darla Trudell was killed in a car accident. She was the passenger; her husband, Joseph Trudell, was the driver. The two minor Trudell children sued their father, as well as the driver of the other car.

¶73 The father, being one of the defendants in the wrongful death suit, could not bring a claim for wrongful death on his own behalf against himself. The children argued that Wis. Stat. § 895.04(2), as amended in 1962,[48] gave the children equal status with the surviving spouse, and thus, the fact that the father was alive did not bar their claim.

¶74 The Cogger court held that Wis. Stat. § 895.04(2) created a "series of priorities with regard to the ownership of a cause of action for wrongful death" and that these priorities were not changed by the 1962 amendment, which added the provision allowing a court to determine an amount to be set aside for the minor children from the surviving spouse's recovery.[49]

¶75 The Cogger court rejected the children's argument that the 1962 amendment creating a set-aside for minor children had put both the surviving spouse and the surviving children in the first priority class.[50] Rather, the court stated: "A careful

---

[48] Ch. 649, Laws of 1961 (enacted Jan. 30, 1962).

[49] Cogger, 35 Wis. 2d at 354-55.

[50] The Cogger court explained:

31

reading of the entire section makes it clear that the trial court . . . must work from the amount recovered by the spouse who is charged with the support of the minor children."[51]

¶76 Looking to case law construing the pre-1962 wrongful death statutes, the court concluded that both before and after the 1962 amendment, "[t]he beneficiaries and their preferred status are as follows:  First, the spouse; second, a child or children; third, the parents.  Thus the nonexistence of the preferred beneficiary or beneficiaries is essential to a right of action by or in behalf of other beneficiaries."[52]

¶77 Even though one of the two children in Cogger was not the child of the surviving spouse, the Cogger court assumed that the surviving spouse had an obligation to support both children and interpreted the statute as specifically addressing minor children supported by the surviving spouse.[53]

---

The general plan of the statute was not changed.  It was only amended to allow the courts to deal with the proceeds which would otherwise go to the surviving spouse in such a way as to protect the dependent children.

We believe that if the legislature had intended to create a cause of action in the surviving children in situations where previously none had existed, it would have done so in a more direct and clear manner.

Cogger, 35 Wis. 2d at 356-57.

[51] Id. at 358

[52] Id. at 355 (quoting Cincoski, 4 Wis. 2d at 425).

[53] Id. at 357.

¶78 Cogger has been invoked in several cases to bar a minor child's recovery when the surviving spouse who had the obligation to support the children was allegedly responsible in some way for the wrongful death. Perhaps the result of these cases may be explained by the fact that holding for the children who were supported by the surviving spouse could indirectly inure to the benefit of the surviving spouse who caused the death.

¶79 In Hanson v. Valdivia, 51 Wis. 2d 466, 187 N.W.2d 151 (1971), the minor children of the surviving spouse and the deceased were barred from bringing suit for the deceased parent's wrongful death when the surviving parent allegedly caused the wrongful death.

¶80 The Hanson court relied on Cogger, stating that "surviving children do not have a cause of action for the wrongful death of one of their parents when the [deceased] is survived by his or her spouse, and the fact that the surviving spouse was responsible for the death does not create a new cause of action in the children." Hanson, 51 Wis. 2d at 475.

¶81 A second case, Bowen v. American Family Insurance Co., 2012 WI App 29, 340 Wis. 2d 232, 811 N.W.2d 887, held that even when the surviving spouse expressly waives the wrongful death claim, the Cogger rule still applies and the child has no recovery.

¶82 In Bowen, the deceased died while a passenger in a car driven by her spouse when the car collided with another car. An adult child of the deceased and the spouse argued that even if

33

the Cogger rule applied, the court should look to the spouse's express disclaimer of his wrongful death claim to pass the claim on to the adult child.

¶83 The court of appeals declared that the living spouse was a "surviving spouse," even though the spouse did not wish to pursue a claim and did not want to be a "surviving spouse."[54]

¶84 The Cogger decision and its progeny are informative, but Cogger is not dispositive in the present case.  The Cogger court did not consider the fact situation presented in the instant case, in which the deceased's spouse is not negligent in causing the death, has no obligation to support the deceased's minor children, and (according to the circuit court) cannot recover damages for wrongful death  under any circumstances.[55]

¶85 A third case that adheres to Cogger and informs our decision in the present case is Xiong ex rel. Edmondson v. Xiong, 2002 WI App 110, 255 Wis. 2d 693, 648 N.W.2d 900.

¶86  Mai Xiong died as a passenger in a car driven by Nhia Xiong.  Mai Xiong and Nhia Xiong were the parents of minor and adult children.  The Xiong children brought a wrongful death action against their father, Nhia Xiong.  The circuit court dismissed the children's action because Nhia Xiong was responsible for Mai Xiong's death and, pursuant to Cogger, could not recover in a wrongful death claim.  The Xiong children

---

[54] Bowen, 340 Wis. 2d 232, ¶¶13-14.

[55] In Cogger, the living spouse apparently may have pursued his own independent claim against the other driver. Cogger, 35 Wis. 2d at 358.

34

argued that the parents were not married, and thus, that their father was not a "surviving spouse."

¶87 On appeal, the court of appeals observed that there was no evidence of any official marriage of the parents, in Laos, Thailand, or Wisconsin.[56] Nonetheless, the court valued the unique facts over the literal interpretation of "surviving spouse" and determined that the word "spouse" in the wrongful death statute could include a "putative spouse." The court of appeals assessed the unique facts surrounding the relationship between the parents and used its "equity powers" to recognize the relationship as sufficient to establish Nhia Xiong as the "surviving spouse" for the purposes of the wrongful death statute.[57]

¶88 The court of appeals in the Xiong case then applied Cogger and concluded that a surviving spouse existed and the children could not recover.[58]

¶89 Cogger and its progeny at first blush seem to preclude the children's recovery in the instant case.

¶90 On closer examination, however, Cogger and its progeny are, as we explained previously, factually distinguishable from the present case. They therefore are not dispositive. Linda Force did not contribute in any manner to the injury and death

---

[56] Xiong, 255 Wis. 2d 693, ¶¶14-16. The father did not submit any evidence contradicting the children's assertion that the marriage was not valid or recognized at law. Id., ¶18.

[57] Xiong, 255 Wis. 2d 693, ¶¶20-21.

[58] Id., ¶25.

35

of the deceased. Rather, the circuit court concluded that she cannot recover because of her estrangement from the deceased. Because Linda Force has no support obligations to the deceased's minor children, she will not benefit if the children recover damages for wrongful death.

¶91 Furthermore, Xiong buttresses the minor children's position in the instant case. Xiong teaches that courts interpret Wis. Stat. § 895.04(2) in line with the unique fact situation and the purposes of the wrongful death statutes, rather than in line with formal compliance with laws governing the formation of a marriage.

¶92 In Xiong, the parties treated each other as husband and wife, and the court concluded that they should be treated as married under the wrongful death statutes even though no proof of a formal marriage at law existed.

¶93 In the instant case, the parties were estranged for over a decade. Adhering to the teaching of Xiong and examining the unique relationship of the parties in the present case dictate that the long-time estranged relationship not be treated as a marriage and that Linda Force not be considered a "surviving spouse" under Wis. Stat. § 895.04(2).

¶94 Additional support for the children's position comes from Steinbarth v. Johannes, 144 Wis. 2d 159, 423 N.W.2d 540 (1988).

¶95 Steinbarth, like Xiong, relied on the unique facts rather than the formality of the legal relationship. Steinbarth teaches that under unusual circumstances in which the purposes

36

of the statutes would not be met, the phrase "surviving spouse" excludes a living spouse and the children may recover damages under the wrongful death statutes.

¶96 In Steinbarth, the husband allegedly intentionally shot and killed his wife. The deceased wife's adult children (the husband's stepchildren) sued the husband for wrongful death. Using a literal interpretation of the statute rendering the husband a "surviving spouse," the circuit court and court of appeals concluded that the adult children's wrongful death claim was barred under Wis. Stat. § 895.04(2) (1985-86).[59] The supreme court reversed.

¶97 The Steinbarth court was persuaded that statutes prohibiting an intentional killer from benefiting from the crime aided in interpreting the phrase "surviving spouse" in the wrongful death statute.[60] The Steinbarth court held "that a spouse who 'feloniously and intentionally' kills his or her spouse is not a surviving spouse for purposes of [the wrongful death statutes], and is treated as having predeceased the decedent so that the cause of action may accrue to the next designated beneficiary."[61]

---

[59] Steinbarth, 144 Wis. 2d at 165. The statute in Steinbarth is substantially identical to the present statute in the relevant provisions.

[60] Id. at 166-167 (e.g., life insurance, beneficiary under contract, joint tenancy).

[61] Id. at 167-68 (emphasis added).

¶98 The Steinbarth court noted that the unique facts of the case dictated the outcome. The court reasoned that an alternative holding would create an "anomalous result" that "[t]he legislature could not have intended."[62]

¶99 The Steinbarth court distinguished Cogger. Cogger involved a surviving spouse who negligently caused the wrongful death; no basis existed in Cogger for stopping a surviving spouse who unintentionally but negligently caused the spouse's death from seeking wrongful death benefits for the loss of the spouse from a more negligent wrongdoer.[63]

¶100 On the other hand, in Steinbarth, the "surviving spouse," a felonious and intentional killer, could not "under any conceivable circumstance seek recovery under the wrongful death statute for the loss of the decedent."[64] Unlike Cogger and its progeny, the surviving spouse in Steinbarth had no claim against a third-party wrongdoer or any ability to recover for wrongful death of the deceased.

¶101 The instant case does not align precisely with Cogger, Hanson, Bowen, Xiong, or Steinbarth. Nevertheless, these cases support the conclusion that under the unique facts of the instant case, the claim of the minor children should prevail.

¶102 The case law demonstrates that the meaning of the phrase "surviving spouse" has been elucidated by scrutinizing

---

[62] Id. at 167.

[63] Id. at 168.

[64] Id. at 169.

unique fact situations to define "surviving spouse" in accord with the legislative purposes of the wrongful death statutes, rather than considering only the literal meaning of the phrase "surviving spouse."  Linda Force, like the spouse in Steinbarth, is barred from recovering for wrongful death under any circumstances, according to the circuit court.  To hold against the children here would allow a wrongdoer to escape liability and deprive relatives of recovery for their loss, simply because of an unusual fact scenario.

¶103 Courts in other jurisdictions that have wrongful death laws similar to Wisconsin's placing children in a secondary beneficiary class,[65] when confronted with unique facts, have held that the secondary beneficiaries have a claim even when the primary beneficiary may exist.  Courts have allowed ameliorating common-law principles to apply to fill in a legislature's unintended gaps in a wrongful death statute.

¶104 The case Evans v. Atlantic Cement Co., 272 So. 2d 538, 541 (Fla. Ct. App. 1973), is a typical example of a court looking to the unique factual circumstances to fulfill the underlying purpose of the wrongful death statute.  In Evans, the court held that a woman who lived with the deceased for nine-and-a-half years and had children with him, and for whom the decedent provided support, could maintain an action for wrongful

---

[65] See Stuart M. Speiser & James E. Rooks, Jr., Recovery for Wrongful Death § 3:3 & n.2 (4th ed. 2005) (noting that in some jurisdictions children are among the primary beneficiary class, while in others, listed in the footnote, children are designated secondary beneficiaries behind the surviving spouse).

39

death although she was not literally a "surviving spouse" of the deceased. The deceased was survived by a surviving spouse and another child from a different marriage who, under Florida law, could maintain a wrongful death action.

¶105 The court reasoned that it had to construe the statute in the context of the unique facts of the case in order to avoid a result contrary to the purposes of the wrongful death statute:

> [T]he preference given by statute to a spouse over a child presupposes the existence of a family, including a parent-child relationship, in the survivors. When the statutes are examined entire, the conclusion cannot be reasonably reached that these class priorities were intended by the legislature to be applied where the fundamental family relationships have been legally destroyed. . . . It is unreasonable to conclude the legislature intended that dependent children or other family members be left without support or remedy, in favor of strangers to them.
>
> . . . .
>
> [W]e believe the literal wording of the statute [is] applicable where fundamental family relationships still obtain. However, where . . . the family relationships have ruptured or divided . . . it is proper to allow the additional classes to intervene.[66]

¶106 Other state courts have permitted secondary beneficiaries to recover damages when the deceased's spouse is still alive. They have done so on a variety of grounds.

¶107 For example, in Foster v. Jeffers, 813 S.W.2d 449 (Tenn. App. 1991), the Tennessee court of appeals held that when a spouse still living after the death of the deceased

---

[66] Evans v. Atlantic Cement Co., 272 So. 2d 538, 541 (Fla. Ct. App. 1973).

affirmatively waives his or her claim, the secondary beneficiaries (in that case, the deceased's nephews) can collect the proceeds from the wrongful death action.[67] The Foster court reasoned that a secondary beneficiary, who would otherwise be barred from a claim by the existence of a surviving spouse, must be able to pursue a claim "to keep alive the decedent's cause of action" and to achieve the statutory purpose of ending the regime in which "it was more economical to kill someone than to merely inflict a nonfatal injury."[68] Although Wisconsin courts have explicitly rejected this waiver approach to the wrongful death statute,[69] Foster is instructive, standing for the proposition that sister states with hierarchical beneficiary structures permit secondary beneficiaries to collect even when primary beneficiaries are still alive, in order to fulfill the purposes of the statute in unusual or unique fact situations.

¶108 Georgia courts have similarly held that in some circumstances, secondary beneficiaries can recover damages when the deceased's spouse is still alive. In Brown v. Liberty Oil & Refining Corp., 403 S.E.2d 806 (Ga. 1991), the Georgia Supreme Court held that although the deceased's spouse was still alive and prior interpretations of the statute had barred children's

---

[67] Foster v. Jeffers, 813 S.W.2d 449 (Tenn. App. 1991); but see Bowen, 340 Wis. 2d 232, ¶¶13-15 (rejecting this waiver rule in Wisconsin).

[68] Foster, 813 S.W.2d at 452.

[69] Bowen, 340 Wis. 2d 232, ¶¶13-15 (rejecting this waiver rule in Wisconsin).

41

wrongful death claims when there was a surviving spouse,[70] in the unique fact scenario of the case in which the surviving spouse abandoned the children and could not be located, "the factual circumstances of this case demand the exercise of [equity] powers to preserve the rights of the minor children."[71] The Georgia courts have subsequently applied this holding to other unusual fact scenarios to hold that secondary beneficiary children can recover damages for wrongful death even when the deceased's spouse is still alive.[72]

¶109 Although these cases are not dispositive of the instant case and do not present a unified theory, they are informative in teaching that state courts have recognized that secondary wrongful death beneficiaries can bring claims in unique fact scenarios in which barring such claims would undermine or contradict the wrongful death statutes' purposes of punishing wrongdoers and compensating the deceased's relatives.

¶110 In sum, Wisconsin case law and case law from other jurisdictions supports the children's claim in the present case.

VI

¶111 Finally, we examine the statutory history. We have explored statutory history previously in our discussion of the text, the legislative purposes, and the case law. The statutory

---

[70] See Mack v. Moore, 345 S.E.2d 338 (Ga. 1986).

[71] Brown v. Liberty Oil & Ref. Corp., 403 S.E.2d 806, 808 (Ga. 1991).

[72] Emory Univ. v. Dorsey, 429 S.E.2d 307 (Ga. App. 1993).

history shows that the legislature has repeatedly amended the classes of potential beneficiaries.   It appears from the statutory history that when a court excluded a class from being a beneficiary, often the legislature would amend the wrongful death statute to include the class.[73]

¶112 For our purposes, amendments in 1961 and 1962 are key in the statutory history, because they directly addressed the right of minor children to recover for wrongful death.

¶113 Before 1961, the statute made the spouse the primary beneficiary and the children secondary beneficiaries as lineal heirs of the deceased:

> The amount recovered shall belong and be paid to the spouse of the deceased; if no spouse survives, to the deceased's lineal heirs as determined by section 237.01; if no lineal heirs survive, to the deceased's brothers and sisters.   If any such relative dies before judgment in the action, the relative next in order shall be entitled to recover for the wrongful death.   A surviving nonresident alien wife and minor children shall be entitled to the benefits of this section.

Wis. Stat. § 331.04(2) (1959-60).

¶114 The 1961 amendment switched the order of the beneficiaries, placing the children as primary beneficiaries and the surviving spouse as a secondary beneficiary.   If there were

---

[73] See, e.g., chs. 164, 581, Laws of 1907 (permitting recovery for brothers and sisters, superseding Brown, 102 Wis. 137); ch. 226, Laws of 1911 (permitting nonresident aliens to recover, superseding McMillan, 115 Wis. 332); § 1, ch. 263, Laws of 1931 (allowing beneficiaries in the hierarchy to recover if a higher beneficiary died, superseding Woodward, 23 Wis. 400).

43

no minor children, the surviving spouse recovered. The legislature amended the statute in 1961 to read as follows:

> If the deceased leaves surviving a spouse, and minor children with whose support he was legally charged, said minor children shall be entitled to an amount as fixed by the circuit court . . . ; said benefits to be used for the support of such child or children during their minority, and after the youngest child reaches 21 years of age, the balance, if any, shall be divided equally among said children surviving. The remainder of the amount recovered or the amount recovered if there are no such surviving minor children shall belong and be paid to the spouse of the deceased . . . .

Ch. 285, Laws of 1961 (enacted July 27, 1961).

¶115 The bill drafting file does not reveal the backstory of this amendment, but the language makes clear that the legislature intended to favor minor children whom the deceased was legally charged to support over a surviving spouse.

¶116 A 1962 amendment reveals the legislature's second thoughts about the newly adopted 1961 hierarchy. The bill drafting file of the 1962 amendment also does not reveal the backstory of this amendment.

¶117 The 1962 amendment, adopted about six months after the 1961 amendment, returned the surviving spouse to primary beneficiary status but protected the minor children by creating a set-aside from the surviving spouse's recovery. This amendment supports the defendant's interpretation of the wrongful death statute that the children are not in the primary class of beneficiaries.

¶118 The 1962 amendment reads as follows:

44

> If the deceased leaves surviving a spouse, and minor children <u>under 18 years of age</u> with whose support he was legally charged, <u>the court before whom an action is pending, or if no action is pending, any court of record, in recognition of the duty and responsibility of a parent to support his minor children, shall determine the amount, if any, to be set aside for the protection of such children after considering the age of such children, the amount involved, the capacity and integrity of the surviving spouse, and any other facts or information it may have or receive, and such amount may be impressed by creation of an appropriate lien in favor of such children or otherwise protected as circumstances may warrant, but such amount shall not be in excess of 50 per cent of the net amount received after deduction of costs of collection.</u>  If there are no such surviving minor children, <u>the amount recovered</u> shall belong and be paid to the spouse of the deceased . . . .

Ch. 649, Laws of 1961 (enacted Jan. 30, 1962).

¶119 This 1962 amendment gave the courts discretion to consider how much the set-aside for the minor children would be, considering "the age of such children, the amount involved, the capacity and integrity of the surviving spouse, and any other facts or information [they] may have or receive."  The legislature made clear that the statute was enacted to protect the spouse but also to recognize "the duty and responsibility of a parent to support his minor children."

¶120 Other than the 1961 and 1962 amendments, in recent years the legislature has left the wrongful death statutes largely intact in the wake of cases depriving or granting the children recovery in unusual fact situations.

¶121 <u>Cogger</u> established that a surviving spouse, even one who was a wrongdoer in causing the deceased's death, remained a primary beneficiary despite cutting off the claims of the minor

45

children.[74]  After Cogger, the legislature took no action to amend the statute.

¶122 Steinbarth established that a living spouse who intentionally kills the deceased cannot be a surviving spouse under the wrongful death statute, and the children can recover.[75] Again, the legislature took no action to amend the statute.

¶123 According to the defendants, their position is supported by the legislature's failure to revise Wis. Stat. § 895.04(2) after Cogger and other cases. These cases barred secondary beneficiaries from recovering under certain circumstances.

¶124 We are not persuaded that the legislative inaction supports the defendants. Legislative inaction is ordinarily weak evidence of legislative acquiescence in or countenance of a judicial or executive branch interpretation.[76]

¶125 Rather, the statutory history, including the 1961 and 1962 amendments, teaches that the legislature has protected the interests of both the surviving spouse and the minor children

---

[74] Cogger, 35 Wis. 2d at 354-55.

[75] Steinbarth, 144 Wis. 2d at 165-67.

[76] See Green Bay Packaging, Inc. v. DILHR, 72 Wis. 2d 26, 36, 240 N.W.2d 422 (1976) ("[L]egislative inaction . . . has been called 'a week [sic] reed upon which to lean' and a 'poor beacon' to follow in construing a statute" (quoted source omitted)); Milwaukee Journal Sentinel v. City of Milwaukee, 2012 WI 65, ¶43 n.21, 341 Wis. 2d 607, 815 N.W.2d 367 (noting that "cases have expressed skepticism about the meaning of legislative inaction") (citing Wenke v. Gehl Co., 2004 WI 103, ¶32, 274 Wis. 2d 220, 682 N.W.2d 405).

and that the legislature has left interpretation of the phrase "surviving spouse" to the courts when unanticipated fact scenarios have emerged.

¶126 In the instant case, we must consider, as the statutory history instructs, the interests of both the surviving spouse and the children based on the facts at hand.

\* \* \* \*

¶127 For the reasons set forth, we interpret the phrase "surviving spouse" in the present case as not including Linda Force, the deceased's estranged spouse who, as a result of the circuit court's dismissal of her wrongful death claim (which was not appealed), is barred from recovery under Wis. Stat. §§ 895.03 and 895.04(2).  If Linda Force is not a "surviving spouse" under the statute, the parties do not dispute that the minor children have a cognizable claim as lineal heirs.  As lineal heirs of the deceased, the children would be first in line for any recovery for the wrongful death of their father.

¶128 We conclude that the circuit court erred in granting the defendants summary judgment and erred in dismissing the minor children's causes of action against the defendants for wrongful death.  The minor children in the present case have a cause of action against the defendants for wrongful death as if Linda Force were not alive at the death of  the deceased.[77]

---

[77] In light of our holding, we need not and do not address the children's equal protection constitutional claim that if Wis. Stat. § 895.04(2) bars their claim absent recovery by the surviving spouse, the statute is unconstitutional.

¶129 Accordingly, we reverse the judgment of the circuit court against the children and in favor of the defendants and remand the matter to the circuit court for further proceedings not inconsistent with this opinion.

*By the Court*.——The judgment and order of the circuit court are reversed and the cause is remanded to the circuit court.

¶130 DAVID T. PROSSER, J. *(concurring).* This is a case of statutory interpretation. The seminal case on statutory interpretation in recent years is <u>State ex rel. Kalal v. Circuit Court for Dane County</u>, 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110.

¶131 In <u>Kalal</u>, the court emphasized the importance of statutory text when it embraced the principle that a court's role is to determine what a statute means rather than determine what the legislature intended. <u>Id.</u>, ¶44. The court said:

> It is . . . a solemn obligation of the judiciary to faithfully give effect to the laws enacted by the legislature, and to do so requires a determination of statutory meaning. Judicial deference to the policy choices enacted into law by the legislature requires that statutory interpretation focus primarily on the language of the statute. We assume that the legislature's intent is expressed in the statutory language. Extrinsic evidence of legislative intent may become relevant to statutory interpretation in some circumstances, but is not the primary focus of inquiry. It is the enacted law, not the unenacted intent, that is binding on the public. Therefore, the purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect.

<u>Id.</u>

¶132 The court explained that statutory interpretation begins with the language of the statute. <u>Id.</u>, ¶45. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." <u>Id.</u> (citations omitted). Then the court added:

> Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore, statutory language is

1

interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results.

Id., ¶46 (emphasis added) (citations omitted).

¶133 In my view, this case requires the court to confront head-on statutory language that, if applied literally, would produce an absurd or unreasonable result.

¶134 Historically, courts have tried to avoid absurd or unreasonable results. The year before Kalal, this court said in State v. Hamilton, 2003 WI 50, ¶38, 261 Wis. 2d 458, 661 N.W.2d 832: "The court should not search for ambiguity. It should enforce a clear statute." However, "One of the few exceptions to this sound principle is that the court will seek to avoid a truly absurd or unreasonable result." Id., ¶39 (citing State v. Burkman, 96 Wis. 2d 630, 642, 292 N.W.2d 641 (1980); State v. Mendoza, 96 Wis. 2d 106, 115, 291 N.W.2d 478 (1980); Kayden Indus., Inc. v. Murphy, 34 Wis. 2d 718, 732, 150 N.W.2d 447 (1967)).

¶135 There are innumerable cases in which Wisconsin courts have repeated or actually invoked this exception.

¶136 In Worachek v. Stephenson Town School District, 270 Wis. 116, 124, 70 N.W.2d 657 (1955), the court stated: "This court has repeatedly held that a statute should not be construed so as to work an absurd result even when the language seems clear and unambiguous." Id. (citing Connell v. Luck, 264 Wis. 282, 58 N.W.2d 633 (1953); Laridaen v. Ry. Express Agency, Inc.,

2

259 Wis. 178, 47 N.W.2d 727 (1951); Pfingsten v. Pfingsten, 164 Wis. 308, 159 N.W. 921 (1916)).

¶137 In Isaksen v. Chesapeake Instrument Corp., 19 Wis. 2d 282, 289-90, 120 N.W.2d 151 (1963), the court stated:

> We are unable to conceive of any reason of policy which might lead the legislature to deny to shareholders so situated the remedy it had provided for others, and Chesapeake has not suggested any.
>
> . . . .
>
> "It is always presumed, in regard to a statute, that no absurd or unreasonable result was intended by the legislature. Hence if, viewing a statute from the standpoint of the literal sense of its language, it is unreasonable or absurd, an obscurity of meaning exists, calling for judicial construction."

Id. (some citations omitted) (quoting Rice v. Ashland Cnty., 108 Wis. 189, 192, 84 N.W. 189 (1900)).

¶138 In Kayden Industries, Inc. v. Murphy, 34 Wis. 2d 718, 732, 150 N.W.2d 447 (1967), the court stated:

> Where there is no ambiguity in the literal terms of the provision under consideration there is no room for judicial construction. . . . The only general exception to the above rule[] . . . is that the court may construe a provision whose meaning is clear if a literal application of the provision would lead to an absurd or unreasonable result.

Id. (citations omitted).

¶139 In Alberte v. Anew Health Care Services, Inc., 2000 WI 7, ¶10, 232 Wis. 2d 587, 605 N.W.2d 515, the court stated:

> While it is true that statutory interpretation begins with the language of the statute, it is also well established that courts must not look at a single, isolated sentence or portion of a sentence, but at the role of the relevant language in the entire statute. Moreover, courts have "'some "scope for adopting a restricted rather than a literal or usual

3

meaning of its words where acceptance of that meaning . . . would thwart the obvious purpose of the statute."'" When a literal interpretation produces absurd or unreasonable results, or results that are clearly at odds with the legislature's intent, "[o]ur task is to give some alternative meaning" to the words.

Id. (brackets in original) (citations omitted).

¶140 In Teschendorf v. State Farm Insurance Companies, 2006 WI 89, ¶15, 293 Wis. 2d 123, 717 N.W.2d 258, the court stated:

[I]f the meaning of the statute appears to be plain but that meaning produces absurd results, we may also consult legislative history. The purpose in this situation is to verify that the legislature did not intend these unreasonable or unthinkable results. Because our purpose in these situations is grounded in open disbelief of what a statute appears to require, we are bound to limit our off-statute investigations to obvious aberrations.

Id. (internal citations and explanatory parentheticals omitted). The court went on, "The reason to doubt a literal meaning of [the statute] is that it clashes with related statutes." Id., ¶24.

¶141 In Gasper v. Parbs, 2001 WI App 259, ¶8, 249 Wis. 2d 106, 637 N.W.2d 399, the court of appeals stated:

[T]he plain language of a statute should not be construed in a manner that leads to absurd or unreasonable results. State v. Yellow Freight Sys., Inc., 101 Wis. 2d 142, 153, 303 N.W.2d 834 (1981). We presume that "the legislature intends for a statute to be interpreted in a manner that advances the purposes of the statute." Verdoljak v. Mosinee Paper Corp., 200 Wis. 2d 624, 635, 547 N.W.2d 602 (1996).

Id.

¶142 These principles were undoubtedly applied in Steinbarth v. Johannes, 144 Wis. 2d 159, 423 N.W.2d 540 (1988), where the court said: "A court will not ordinarily engage in

4

statutory interpretation unless a statute is ambiguous. A statute may be ambiguous and require judicial construction if the literal application of the language would lead to an absurd result." Id. at 165 (citing DeMars v. LaPour, 123 Wis. 2d 366, 370, 366 N.W.2d 891 (1985)). Steinbarth, of course, interpreted the same statute now before the court.

¶143 Courts try to avoid absurd results, but courts are not eager to disregard the seemingly clear language of a statute. This reluctance is salutary because it reflects the deference and respect of the judiciary for the policy choices of other branches of government.

¶144 For judges, there is plenty of solid ground between judicial activism and judicial paralysis. Our precedent provides guidance on when judges should act and when they should not.

¶145 Absurd results are much more than undesirable results. Absurd results are aberrations that clash with the manifest purpose of a statute or related statutes (evidenced by statutory language) and cannot be explained as a rational exception to the statutory scheme. Absurd results are usually unexpected. They are different from harsh consequences because they are seldom the fault of an adversely affected party. Instead, they almost always result from circumstances beyond the party's control. Absurd results produce hardship or unfairness that is quickly recognized and cannot be ignored.

¶146 This case satisfies these standards, as is documented in the majority opinion. We ought to act but also implore the legislature to rewrite the statute.

¶147 For the foregoing reasons, I respectfully concur.

¶148 PATIENCE DRAKE ROGGENSACK, J. *(dissenting)*. While the majority opinion reaches an appealing result as it permits the minor children of Billy Joe Force to maintain a claim for his wrongful death, I cannot join the opinion. In my view, the majority opinion's conclusion that the statutory term "surviving spouse" does not mean a spouse who has survived the death of her husband because she was estranged from her husband at his death is not based on statutory construction and will create considerable mischief in the future. Accordingly, I would affirm the circuit court, and I respectfully dissent.

## I. BACKGROUND

¶149 The underlying facts are not disputed or complicated. On December 12, 2008, Billy Joe Force died as a result of a motor vehicle accident. At the time of his death, Billy was married to Linda Force. However, Billy and Linda had been separated since 1996, and Billy had not provided any support to Linda since 1997.

¶150 Billy and Linda had no children of their marriage. However, at his death, Billy had three minor children, born of two women, neither of whom he had married. It is these three children who seek to maintain this wrongful death action against Jeffrey Brown, the driver of the other vehicle in the accident; his insurer, American Family Mutual Insurance Company; and

1

Regent Insurance Company, the insurer of Billy's employer, for whom Billy was driving at the time of the accident.[1]

¶151 The circuit court granted summary judgment of dismissal, concluding that: (1) Linda survived Billy; (2) the children had no independent cause of action under Wis. Stat. § 895.04(2); (3) Linda had no compensable damages; and (4) because Linda could not recover, no offset was available for the children. The court of appeals certified the issue of whether children have an independent claim for relief under § 895.04 when there is a surviving spouse, who has been estranged from the decedent for more than ten years and could not recover, thereby precluding any set aside for the children.[2] We accepted certification.

## II. DISCUSSION

### A. Standard of Review

¶152 We are asked to construe the term "surviving spouse" in Wis. Stat. § 895.04(2). Statutory interpretation presents a question of law for our independent review; however, we benefit from the circuit court's discussion. Spiegelberg v. State, 2006 WI 75, ¶8, 291 Wis. 2d 601, 717 N.W.2d 641. When we construe a statute, we also consider our past interpretations of that

---

[1] Because Billy was driving for his employer at the time of the accident, the employer could bring a third party liability action to recover money the employer may have paid on Billy's behalf. See Wis. Stat. § 102.29; Adams v. Northland Equipment Co., 2014 WI 79, ¶4, __ Wis. 2d __, __ N.W.2d __. Section 102.29 claims are mentioned in Wis. Stat. § 895.04(2).

[2] Force v. Am. Family Mut. Ins. Co., No. 2012AP2402, unpublished slip op. (Wis. Ct. App. July 3, 2013).

statute. <u>Schill v. Wis. Rapids Sch. Dist.</u>, 2010 WI 86, ¶49, 327 Wis. 2d 572, 786 N.W.2d 177.

### B. Wisconsin Stat. § 895.04(2)

¶153 We are not writing on a clean slate as we interpret Wis. Stat. § 895.04(2) in the case now before us. As the court of appeals correctly pointed out, our interpretation of <u>Cogger v. Trudell</u>, 35 Wis. 2d 350, 151 N.W.2d 146 (1967), precludes recovery for children when there is a surviving spouse who cannot recover. Courts have followed <u>Cogger</u> with only one exception since 1967, <u>Steinbarth v. Johannes</u>, 144 Wis. 2d 159, 423 N.W.2d 540 (1988).

¶154 In <u>Steinbarth</u>, the husband feloniously and intentionally killed his wife, whose death was the basis for the children's wrongful death claim. During our consideration of the children's claim, we reviewed Wis. Stat. § 852.01(2m) (1985-86), which precluded one who feloniously and intentionally killed a decedent from recovering as an heir of the decedent. <u>Id.</u> at 166. We noted that § 852.01(2m) (1985-86) treated the killer as having predeceased the decedent.[3] <u>Id.</u> We reasoned that the husband in <u>Steinbarth</u> should be treated consistent with

---

[3] Wisconsin Stat. § 852.01(2m) (1985-86) provided:

> Requirement that heir not have intentionally killed the deceased. (a) If any person who would otherwise be an heir under sub. (1) has feloniously and intentionally killed the decedent, the net estate not disposed of by will passes as if the killer had predeceased the decedent.

3

the statutory directive of § 852.01(2m) (1985-86).[4]  In order to do so, we concluded that a husband who feloniously and intentionally killed his wife will be treated for purposes of a wrongful death claim as though he had predeceased his wife. Accordingly, there would be no surviving spouse under Wis. Stat. § 895.04 and the children could maintain an action for wrongful death.  Id. at 167.

¶155 In Steinbarth, we distinguished Cogger by noting that the spouse's death in Cogger was based on negligence and in Steinbarth, it was based on intent to kill.  We also noted a specific legislative directive about the status of one who kills his spouse for purposes of claims made relative to the death of the spouse.  Neither distinction is present here.  Linda had nothing to do with Billy's death, and there is no statutory directive, other than the wrongful death statute, Wis. Stat. § 895.04, that applies here.

¶156 If I were writing for the majority, I would affirm the circuit court and fully describe how unfair the current statute is to children who have suffered significant damages due to the wrongful death of a parent, but who have no claim when the surviving spouse has no recovery.  By the 1961 amendments to Wis. Stat. § 895.04(2), the legislature made an attempt to independently protect children who suffered a loss because of

---

[4] Wisconsin Stat. § 852.01(2m) was revised subsequent to Steinbarth v. Johannes, 144 Wis. 2d 159, 423 N.W.2d 540 (1988), and Wis. Stat. § 854.14 further addresses homicide and rights of inheritance.  The revisions are not relevant to our decision in Steinbarth or to my dissent.

4

the wrongful death of a parent, but more is needed today to finish what the legislature then began.

¶157 Instead of acknowledging that a claim for wrongful death is purely statutory and that at common law no such claim existed, Bowen v. American Family Insurance Co., 2012 WI App 29, ¶10, 340 Wis. 2d 232, 811 N.W.2d 887, the majority opinion pretends that it is construing Wis. Stat. § 895.04(2) and creates a new claim.[5] It interprets the statutory phrase, "surviving spouse," as not including Linda, Billy's spouse who survived him. The majority justifies the result it reaches by relating that Linda and Billy have been estranged for ten years and that Linda could not prove wrongful death damages on her own behalf.[6]

¶158 While the majority opinion's result is appealing, I cannot join the majority opinion's interpretation of the Wis. Stat. § 895.04(2) term "surviving spouse." The methods employed to interpret § 895.04(2) comport with none of the legal principles that guide statutory interpretation. See, e.g., State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶¶38-46, 271 Wis. 2d 633, 681 N.W.2d 110. Saying that § 895.04(2) means whatever the majority wants it to mean will cause confusion and repetitive litigation.

¶159 For example, is an estrangement of five years sufficient time to cause a spouse who survives the decedent to no longer be a "surviving spouse" under the majority opinion's

_____

[5] Majority op., ¶¶125-26.

[6] Majority op., ¶5.

construction of Wis. Stat. § 893.04(2)? Is two years long enough, if there has been absolutely no communication between the spouses? Furthermore, how does the majority opinion line up with spousal intestate succession under Wis. Stat. ch. 852, which says nothing about a spouse's rights being limited due to the husband and wife being separated? See Wis. Stat. § 852.01.

¶160 Claims of the type now before us under Wis. Stat. § 895.04(2) are commonly brought and commonly denied because of our decision in Cogger.[7] We would assist children who attempt to bring wrongful death claims in the future by pointing out the unfairness the current statute creates and asking the legislature to consider revising § 895.04(2), rather than creating a common law fix for the children in the present case and leaving all similarly situated children without a claim due to our interpretation of § 895.04(2) in Cogger.

---

[7] See Bowen v. Am. Family Ins. Co., 2012 WI App 29, 340 Wis. 2d 232, 811 N.W.2d 887 (father was a defendant and could not recover due to his contributory negligence in the accident that killed his wife; therefore, children had no claim); Xiong v. Xiong, 2002 WI App 110, 255 Wis. 2d 693, 648 N.W.2d 900 (father drove vehicle in which mother was passenger who died after an accident; children had no claim); Anderson v. Westchester Fire Ins. Co., No. 94-1211-FT, unpublished slip op. (Wis. Ct. App. Nov. 29, 1994) (concluding that because stepmother survived the death of child's parent, child had no claim under Wis. Stat. § 895.04); Maki v. Kahler, No. 83-773, unpublished slip op. (Wis. Ct. App. Mar. 27, 1984) (concluding that children had no claim based on Cogger). Cogger has been cited 25 times in cases noted in Westlaw's database and probably many times that number in circuit court decisions from which no appeal was taken.

6

### III. CONCLUSION

¶161 While the majority opinion reaches an appealing result as it permits the minor children of Billy Joe Force to maintain a claim for his wrongful death, I cannot join the opinion. In my view, the majority opinion's conclusion that the statutory term "surviving spouse" does not mean a spouse who has survived the death of her husband because she was estranged from her husband at his death is not based on statutory construction and will create considerable mischief in the future.

¶162 Accordingly, I would affirm the court of appeals and I respectfully dissent.

¶163 I am authorized to state that Justices ANNETTE KINGSLAND ZIEGLER and MICHAEL GABLEMAN join this dissent.

¶164 ANNETTE KINGSLAND ZIEGLER, J. *(dissent).* I join Justice Roggensack's dissent, but write separately to clarify that, had the majority been able to link the Force children's ability to recover with the language of the statute, and reconcile that text with our prior case law, <u>see, e.g.</u>, <u>Cogger v. Trudell</u>, 35 Wis. 2d 350, 353, 151 N.W.2d 146 (1967), I would have joined the majority. The majority was unable, however, to find a satisfactory, textual way to construe Wis. Stat. § 895.04(2) so to allow the Force children to recover in a wrongful death action. As a result, I am compelled to join Justice Roggensack's dissent.

¶165 Justice Prosser concludes that the application of the statutory language produces an "absurd" result. <u>See</u> Justice Prosser's concurrence, ¶133. An unpalatable result is not the same as an absurd result. We are to look to the text of the statute to determine whether relief is afforded to the litigants. "In construing or interpreting a statute the court is not at liberty to disregard the plain, clear words of the statute." <u>State ex rel. Kalal v. Circuit Court for Dane Cnty.</u>, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). It is not the role of the courts to "save" the legislative branch from the consequences of the laws it passes, or to create a remedy when the plain language of the statute does not afford relief.

¶166 As a practical matter, the legislature cannot be expected to meaningfully reconsider legislation if the court usurps the role of the legislature in order to create a remedy

1

where none otherwise exists. The long and complex history of the wrongful death statute provides support for the notion that the legislature should consider revision to provide relief when it should be due. <u>See</u> majority op., ¶¶69-102 (discussing <u>Steinbarth v. Johannes</u>, 144 Wis. 2d 159, 423 Wis. 2d 540 (1988); <u>Hanson v. Valdivia</u>, 51 Wis. 2d 466, 187 N.W.2d 151 (1971); <u>Cogger</u>, 35 Wis. 2d 350; <u>Bowen v. American Family Ins. Co.</u>, 2012 WI App 29, 340 Wis. 2d 232, 811 N.W.2d 887; <u>Xiong v. Xiong</u>, 2002 WI App 110, 255 Wis. 2d 693, 648 N.W.2d 900). The majority's apparent difficulty in distinguishing these cases provides an apt illustration of the problem. The court should not avoid the plain language of a statute in order to prevent unpleasant results. In my view, legislative action is required.

¶167 For the foregoing reasons, I dissent.